AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 3:18MJ144 (RCY) |
| Marcus WATSON | ) | |
| Defendant(s) | ) | |

F I L E D
AUG 2 3 2018
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 22, 2018__ in the county of __City of Fredericksburg__ in the __Eastern__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 United States Code, Section 841(a)(1) and (b)(1)(C) | Did knowingly, intentionally and unlawfully possess with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substance. |

This criminal complaint is based on these facts:
See attached.

☑ Continued on the attached sheet.

_____
Complainant's signature

SA Steve J. Aziz, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: __8/23/2018__

City and state: __Richmond, VA__

/s/ _____
Roderick C. Young
United States Magistrate Judge

## Affidavit in Support of Criminal Complaint

I, Steven J. Aziz, being duly deposed and sworn state that:

1. This affidavit is offered in support of a Criminal Complaint charging Marcus WATSON with possession with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substances in violation of 21 U.S.C. § 841(a)(1).

2. Your affiant is a Special Agent with the Drug Enforcement Administration and has been so employed for over 14 years. I graduated from the DEA Academy in Quantico in 2004, and have since received specialized training in drug enforcement tactics and techniques. Prior to becoming a DEA Special Agent, I served 9 years as a certified police officer in Massachusetts, responsible for the enforcement of state and local criminal laws and ordinances. During the course of my work as a police officer and as a DEA Special Agent, I have participated in and/or led investigations into the unlawful distribution of controlled substances, the unlawful possession of controlled substances with the intent to distribute and conspiracies to unlawfully distribute controlled substances. I have sought and executed numerous felony arrest warrants and have authored numerous criminal complaints and search warrants leading to convictions in state and federal courts. I also served as an instructor at the DEA Academy in Quantico, teaching courses in drug identification, surveillance, drug trafficking methods, drug tactics and techniques to basic agent trainees and courses in identifying, investigating and mediating clandestine laboratories to federal and state narcotics agents and officers.

3. This affidavit is based upon information and evidence personally obtained by me throughout this investigation and through information received by other law enforcement officers during the course of this investigation. I believe that all of the information contained herein is factual, reliable and truthful. I have included in this affidavit only that information necessary to establish probable cause to support the charge contained in the Criminal Complaint, and

have not included all the facts gathered during this investigation and known to the government.

## Probable Cause

4. In the early morning hours of November 29, 2017, law enforcement responded to a report of an overdose at a residence in Caroline County, Virginia, located in the Eastern District of Virginia. Upon arrival, the officers found an adult female dead in her bathroom. Her husband, herein referred to as Gregory Rosie, first told a detective on scene and later that morning told me that his wife had ingested heroin that Rosie had obtained the night before. Rosie explained that the previous evening Rosie gave money to a female, who had a heroin connection in Richmond, Virginia. The female was driven to Richmond by one of Rosie's friends, Marcus WATSON and the female purchased heroin from an individual using money supplied by Rosie. The female brought the heroin back to Rosie that evening and Rosie distributed a half gram to the female and a full gram to Marcus WATSON, who drove her.

5. Through the course of this investigation, I interviewed the female a number of times between December, 2017 and May, 2018. The female admitted that she is a heroin user and customer of Rosie. The female admitted to travelling to Richmond, Virginia with Marcus WATSON for the purpose of purchasing heroin for Rosie on numerous occasions, including on the night of November 28, 2017.

6. I interviewed an individual source of information (hereinafter "SOI-1") who admitted to being a regular user of heroin and that SOI-1 received heroin from Rosie on a number of occasions, including on the evening of November 28, 2017 and again in the early morning hours of November 29, 2017. SOI-1 stated that SOI-1 had known Rosie for several months and had been renting a room from Rosie since October, 2017. On November 28, 2017, SOI-1 overheard Rosie, Rosie's wife, the female, her boyfriend and Marcus WATSON talking in Rosie's bedroom. WATSON told SOI-1 that WATSON was waiting to take the female to Richmond to meet with her heroin source of supply (SOS).

7. SOI-1 stated that when WATSON and the female returned from Richmond at approximately 10:15 pm that night, Rosie gave SOI-1 a point and a half (0.15 gram) of the suspected heroin. SOI-1 said that he injected the drug and found it to have a very strong effect, which made him think it may contain fentanyl. SOI-1 advised that he is familiar with the effects and appearance of fentanyl and that he then cautioned Rosie about giving the drug to the other subjects present at the residence. SOI-1 said that he again recognized the voices of Rosie, Rosie's wife, WATSON, the female and her boyfriend in Rosie's bedroom.

8. SOI-1 said that at approximately 4:30 am on November 29, 2017, Rosie came down to SOI-1's bedroom and told him to bring Narcan upstairs for Rosie's wife. SOI-1 stated that when he entered Rosie's bedroom, he observed Rosie's wife, unresponsive next to the bed and Rosie attempting to carry her into the bathroom. SOI-1 said he called 911 at Rosie's request, and gave the phone to Rosie. SOI-1 said that Rosie then told SOI-1 to retrieve the heroin from under the mattress of Rosie's bed and remove it from the house before the police arrived. SOI-1 knew there was an outstanding warrant for his arrest and therefore agreed to leave with the heroin before the police arrived.

9. SOI-1 related that he went to Marcus WATSON's house and then to the shop where Marcus WATSON was employed to await further direction from Rosie. SOI-1 advised that later on this same day, Rosie called and asked SOI-1 to bring some heroin back to the house because Rosie was sick (meaning he was suffering with opioid withdrawal). SOI-1 stated that Rosie asked Marcus WATSON to bring the drugs to his house and Marcus WATSON left shortly thereafter with the drugs. The police stopped Marcus WATSON in Rosie's driveway and found him in possession of the suspected drugs. The suspected drugs were seized and submitted to the DEA Mid-Atlantic Laboratory for analysis. According to that analysis, the suspected drugs were a mixture and substance containing heroin, fentanyl, and quinine.

10. Subsequently, throughout this investigation I received information from numerous sources of information that Marcus WATSON was a regular companion and coconspirator of Greg Rosie. WATSON regularly made drug runs with and for Rosie and WATSON was a regular consumer of heroin. On June 22, 2018, agents utilized a reliable confidential informant

("CI") to make a controlled purchase of heroin from a residence located in Caroline County, where Rosie and Marcus WATSON were allegedly staying. Prior to the purchase, the CI talked to WATSON, who told the CI to come on over to make the purchase. However, when the CI entered the residence, WATSON was passed-out on the floor of the kitchen. Another individual in the house indicated that WATSON was passed out because he had used drugs and that Rosie also had used and overdosed. That individual then distributed the purported heroin to the CI. The item purchased was sent to the DEA Mid-Atlantic Laboratory and tested positive for fentanyl.

11. On August 22, 2018, your affiant and other law enforcement officers (collectively referred to as "agents"), received reliable information regarding the whereabouts of Rosie, who was wanted on a federal drug trafficking charge. According to the reliable source of information, Rosie was going to meet a regular customer in the parking lot of WoodSpring Suites in Fredericksburg, Virginia to make a sale. Law enforcement went to the parking lot of the WoodSpring Suites and waited for Rosie to arrive. Rosie arrived in the parking lot travelling in a red Hyundai Santa Fe, driven by a female. Also in the vehicle were a 15-year old boy and Marcus WATSON. As the vehicle pulled into a parking space, Marcus WATSON got out of the vehicle and started to walk away from the vehicle at which point agents detained him by telling WATSON to stop and get on the ground. As WATSON stopped he dropped two packs of cigarettes on the ground. I patted down WATSON, and felt what I immediately recognized to be capsules in his front pants pocket. Based on my training and experience and the specific information and evidence I have received in this case, I know that heroin and fentanyl mixture (commonly referred to as "scramble") is now typically packaged in clear gelatin 2-piece capsules that are easily purchased on-line in a variety of sizes. Based on the reliable information that I received over the course of this investigation that Marcus WATSON was a regular user, possessor and distributor of heroin; that Rosie was supposed to be meeting a customer at the hotel parking lot to distribute heroin; and that WATSON exited the vehicle in a manner consistent with looking to meet someone in the parking lot; I believed that the item in WATSON's pocket was a mixture and substance containing heroin. Upon removing the bag from WATSON's shorts pocket, the item was a clear plastic bag containing 15 clear gelatin 2-piece capsules containing a white

powder substance, consistent in appearance and packaging with a mixture and substance containing heroin. Also in the bag was 1 empty clear gelatin 2-piece capsule with white powder residue and 2 orange tablets. In a subsequent search of the two cigarette packages dropped by WATSON, agents discovered that one package contained a single green straw and the other package contained cigarettes, 2 straws, a razor with white powder residue, and 2 Xanax pills. Based on my training and experience, each capsule would contain multiple dosage units of heroin. Based on my training and experience, fifteen capsules is inconsistent with personal use.

12. Based upon the forgoing evidence, I submit that there is probable cause to believe that on or about August 22, 2018, in the Eastern District of Virginia, Marcus WATSON, did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Steven J. Aziz
Special Agent, DEA

Sworn and subscribed before me this 23 day of August, 2018 in the City of Richmond, Virginia.

/s/
Roderick C. Young
United States Magistrate Judge

Reviewed by Olivia L. Norman, AUSA