IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| V. ] | Case No. 3:18-cr-00090-003 |
| ] | |
| MARCUS IAN WATSON ] | |

**DEFENDANT'S POSITION WITH RESPECT TO
SENTENCING FACTORS**

COMES NOW, the defendant, MARCUS IAN WATSON, by counsel, George A. Townsend, IV, pursuant to Rule 32 of the *Federal Rules of Criminal Procedure,* § 6A1.3 of the *United States Sentencing Guidelines* (hereinafter U.S.S.G.) and § 18 U.S.C. 3553(a) and hereby represents that he has received and reviewed the Presentence Report (hereinafter PSR) in the above case and has **no objection** to the PSR resulting in a Offense Level Total of 21 and Criminal History Category I.  (PSR, page 19).

For the following reasons, the defendant should be sentenced to the low-end of the guideline range:  37 months of incarceration.

I. Relevant Sentencing Law

In United *States v. Abu Ali*, 528 F.3d 210, 259, 260 (4th Cir. 2008) the Court of Appeals for the Fourth Circuit summarized the current sentencing framework:

> In *United States v. Booker,* 543 U.S. 220, 245, 125 S.Ct. 738, 160, L.Ed.2d 621 (2005), the Supreme Court rendered the Sentencing Guidelines "effectively advisory."  Nevertheless, district courts in the post-Booker landscape must follow specific steps to arrive at an appropriate sentence.
> First, the district court must correctly calculate a defendant's sentence under the now-advisory guidelines.  *See Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."); *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007).  A sentence based on an improperly calculated guideline range will be found unreasonable and vacated.  *See Gall*, 128 S.Ct. at 597 (noting

that "improperly calculating" the applicable Guidelines range constitutes a "significant procedural error").

Next, the district court must allow "both parties an opportunity to argue for whatever sentence they deem appropriate." *Gall*, 128 S.Ct. at 596. In light of these arguments, the district court must then "consider all of the § 3553(a) factors," *id.*, keeping in mind the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, 128 S.Ct. 558, 570, 169 L.Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)); *see also Gall*, 128 S.Ct. at 596 & n. 6. In so doing, the court "must make an individualized assessment based on the facts presented" and cannot "presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 596-97. If the sentencing court believes "an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. at 597.

Finally, the district court "must adequately explain the chosen sentence." Id. This "allow[s] for the meaningful appellate review" and "promote[s] the perception of fair sentencing." *Id*. Notably, if the court imposes "an unusually lenient or an unusually harsh sentence," it must provide "sufficient justifications" for its selection. *Id.* at 594; *see also Rita*, 127 S.Ct. at 2468 (stating "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has … a reasoned basis for exercising his own legal decisionmaking authority").

II. Applying 18 U.S.C. § 3553(a)

Considering all of the relevant factors of 18 U.S.C. § 3553(a), a sentence of 37 months incarceration, the low-end of the guidelines, would be "sufficient, but not greater than necessary" to accomplish the numerous goals of sentencing.

A. The first set of factors to be considered to determine an appropriate sentence is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a).

The facts of this case have been detailed in the agreed Statement of Facts and again on pages 5-8 of the PSR.

2

The facts as they pertain to Mr. Watson are that he was a drug user and driver/delivery man for the members of the drug conspiracy charged in Count 1 of the Superseding Indictment in this case. Mr. Watson entered a guilty plea to Count 4 of the Superseding Indictment which alleged a single distribution of heroin and fentanyl on the night of November 28, 2017 leading into the early morning hours of November 29, 2017. This night was significant because after using illegal narcotics, Elizabeth Rosie overdosed and died.

The facts leading to Mr. Watson's participation as a driver in a drug conspiracy are unfortunately much too familiar to the criminal justice system. While Mr. Watson incurred a limited criminal record when he was 19-21 years old, he lived his adult life as a productive citizen who had steady, reliable, lucrative employment. From the age of 21 until his arrest for the pending case, Mr. Watson did not sustain any criminal charges. During these two decades he was employed and faithfully supported his family.

Dating back to 2007, prior to the birth of his two daughters, Mr. Watson was employed by United States Industrial Supply. His employer reported that Mr. Watson was, "…very dependable and reliable. He was well liked by all of their customers. He had a great personality." (PSR at 18) From 2009 to 2014 (part-time) Mr. Watson was employed as a licensed CDL driver for a FedEx contractor, Gann Parcel Service.

Mr. Watson left his position with Gann Parcel Service (while still maintaining part-time employment) in 2011. He left to become a manager with Dynamic Medical Systems where he was solely responsible for company deliveries in the Fredericksburg delivery area. He maintained this position until his arrest in November 2017 on state criminal charges related to the offense conduct in the indictment.

While Mr. Watson was consistently, reliably working he developed an opiate dependence. On the first birthday of Mr. Watson's oldest daughter a friend approached Mr. Watson about opiate (Percocet) use. Unknown to Mr. Watson, the friend was addicted to opiates. The friend shared a pill with Mr. Watson and suggested that he go get a prescription from a doctor. Mr. Watson followed this suggestion and a doctor proscribed Percocet. Initially, Mr. Watson used the pills selectively, but as time went on Mr. Watson became addicted to the prescription medication. At first, the medication gave Mr. Watson a feeling of increased energy and eventually ended with his complete opiate dependence on street-level heroin.

As time passed, Mr. Watson became increasingly addicted to the opiate medication. His use slowly transformed from an occasional pill to multiple pills each day. Even while Mr. Watson's addiction advanced, he was always able to maintain employment and support his family. By 2015, Mr. Watson, Greg Rosie and Beth Rosie were all addicted to prescription opiate medication and would share the pills. They were all receiving prescription pain pills and would share the pills as needed between the three.

In 2017, Greg Rosie approached Mr. Watson with heroin. Mr. Watson declined the invitation to use heroin at first. Although his opiate addiction had grown significantly, but he initially refused the transition to heroin use. As the supply of prescription medication became increasingly restrictive, Mr. Watson eventually resorted to heroin use.

The events of November 28 and 29, 2019, are a microcosm or Mr. Watson's participation in the charged drug distribution conspiracy (as detailed in the statement of facts). Mr. Watson was merely a heroin user and driver to pickup and deliver heroin. As

established in the Statement of Facts and pages 6-8 of the PSR, when Mr. Watson drove Ms. Queen to purchase heroin for Mr. Rosie, the heroin was delivered to Mr. Rosie and then he would provide a use quantity to Mr. Watson. This pattern of behavior shows the relative roles of each participant. Mr. Watson was merely a cog in the larger engine that was responsible for distributing heroin.

B. The second set of factors contemplated by 18 U.S.C. § 3553(a) discusses the

**(2)** the need for the sentence imposed—
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant…

A sentence at the low-end of the guideline range would sufficiently accomplish these goals.

While the seriousness of the offense is clear, particularly given the recent media and legislative attention attributed to the "opioid epidemic," Mr. Watson's punishment should be counterbalanced with his limited criminal history and relatively limited role in the distribution of heroin. As noted on pages 13 and 19 of the PSR, Mr. Watson has a Criminal History Category of I. While Mr. Watson has some criminal convictions, they were confined to his early years and ended at the age of 21. The only serious criminal conviction was incurred when he left his alcoholic father's house at 18 years old. Mr. Watson took a couple of his checks and forged three of the checks for food purchases, each totaling $20 or less. (PSR at 10, 11)

A sentence of 37 months is certainly sufficient as a deterrent for others in a similar situation. This sentence would be the longest period of incarceration for Mr.

5

Watson and at a time when he is removed from his family and misses significant developmental years for his young daughters. Mr. Watson has already missed significant moments in each of his daughter's lives and it has saddened him greatly.

Not only will the sentence imposed create a deterrent effect on Mr. Watson, but the Court will also impose a period of at least three years of supervised release. (PSR at 20) This will be an additional deterrent and provide the Court and community a measure to ensure Mr. Watson regains employment and abstains from the root of his criminal conduct: drug abuse.

As noted above, Mr. Watson has always been a dedicated employee. Given that he has lived in the Fredericksburg area his entire life, he has significant business contacts. Mr. Watson has already started tapping into those resources in preparation for employment when he is released from incarceration. Mr. Watson's employability and his desire to assimilate back into his community bode well for his limited risk of recidivism.

C. The next sentencing factor contemplated by 18 U.S.C. § 3553(a) is "the need for the sentence imposed…to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

As noted above, Mr. Watson was employed with a valid commercial drivers license. He will be able to return to his community and regain employment.

D. The last relevant sentencing factor contemplated by 18 U.S.C. § 3553(a) is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct…."

6

Due to Mr. Watson's limited criminal history and the fact that he has a Criminal History Category I, a sentence at the low end of the guidelines is justified.

For all of the above reasons, a sentence at the low-end of the sententencing guideline range is appropriate.

Respectfully submitted,<br>
MARCUS IAN WATSON<br>
<br>
By :_____/s/_____<br>
Counsel

George A. Townsend, IV, Esquire
P.O. Box 634
Midlothian, Virginia 23113
Tel. (804) 248-0400
Fax (804) 782-0115
VSB No. 41972
gtownsend.crimlaw@me.com

CERTIFICATE OF SERVICE

I do hereby certify that on the twenty-third day of May 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF filing system which will then send a notification of such filing (NEF) to counsels of record.

Olivia L. Norman
Office of United States Attorney
919 East Main Street, Suite 1900
Richmond, VA 23219
Phone: 804-819-5400
Fax: 804-771-2316

Olivia.L.Norman@usdoj.gov

                                                                                                   /s/
George A. Townsend, IV, Esquire
P.O. Box 634
Midlothian, Virginia 23113
Tel. (804) 248-0400
Fax (804) 782-0115
VSB No. 41972
gtownsend.crimlaw@me.com